**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **JUDY FAY HUDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:01CV20MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Judy Fay Hudson ("Plaintiff") for Social Security disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff filed a brief in support of the Complaint. Doc. 17. Defendant has filed a brief in support of the Answer. Doc. 21. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 6.

## I.
## PROCEDURAL HISTORY

On October 10, 2007, Plaintiff filed applications for disability insurance and SSI alleging an onset date of July 2, 2003. Tr. 93-109. Plaintiff's applications were denied and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 61. A hearing was held on October 27, 2008. Tr. 23-40. At the time of the hearing, Plaintiff filed a Notice of Amended Onset Date, changing her alleged onset date to July 6, 2004. Tr. 129. By decision dated January 20, 2009, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act. Tr. 17-23.

On December 11, 2009, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir.

2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals

held:

> [t]he concept of substantial evidence is something less than the weight of the
> evidence and it allows for the possibility of drawing two inconsistent
> conclusions, thus it embodies a zone of choice within which the Secretary may
> decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely

because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d

1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of

the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de

novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v.

Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).

Instead, the district court must simply determine whether the quantity and quality of evidence is

enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v.

Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir.

2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen,

830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992)

(holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial

evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject

to reversal merely because substantial evidence may also support an opposite conclusion or because

the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also

Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect

relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility

assessment must be based on substantial evidence. <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. <u>Goff,</u> 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. <u>Onstead</u>, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. <u>Cox</u>, 495 F.3d at 617; <u>Krogmeier</u>, 294 F.3d at 1022.

Plaintiff was born on October 20, 1949. At the time of the hearing she was fifty-nine years old and undergoing chemotherapy. Her past relevant work includes retail sales clerk and cashier. Plaintiff alleges that she became disabled on July 6, 2004, due to liver cancer, chemotherapy for colon

cancer, chronic pain, metastatic lever cancer causing pain and weakness, low energy, and neuropathy of the feet and legs. The ALJ found that Plaintiff last met the insured status requirements of the Act on June 30, 2005; that she did not engage in substantial gainful activity from her alleged onset date of July 6, 2004, through June 30, 2005; that, through the date she was last insured, Plaintiff had the medically determinable impairment of carcinoma of the colon with subsequent surgical resection and chemotherapy; that, although Plaintiff developed carcinoma of the liver in 2007, that condition is not determinative of whether she is disabled under the Act, as she must have been disabled prior to June 30, 2005; that Plaintiff's testimony and that of her husband regarding Plaintiff's symptoms were not fully credible; that the medical evidence failed to show that Plaintiff had an impairment that significantly limited her ability to perform work-related activities for twelve months or longer during the relevant period; and that, therefore, Plaintiff was not under a disability, as defined by the Act, anytime from July 6, 2004, Plaintiff's alleged onset date, through June 30, 2005, the date she was last insured.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in finding that Plaintiff did not have a severe impairment or combination of impairments that significantly limit her ability to perform basic work-related activities for twelve consecutive months; because the ALJ erred in finding that Plaintiff's medical impairment does not meet the requirements of a listed level of severity; because the additional evidence submitted to the Appeals Council establishes that Plaintiff is disabled; and because the ALJ did not properly consider Plaintiff's credibility and that of her husband. For the following reasons the court finds that the ALJ's decision is supported by substantial evidence.

**A.     The ALJ's Credibility Determination:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).   Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).   In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).   "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).   See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).   For the following reasons, to the extent that the ALJ found Plaintiff not disabled prior

to June 30, 2005, the court finds that substantial evidence supports the ALJ's determination that Plaintiff was not fully credible.[1]

First, the ALJ considered Plaintiff's work history. In particular, the ALJ considered that from 1970 to 1976, in 1981, and from 1988 to 2000, Plaintiff had annual recorded earnings, "but she earned over $10,000 only twice." Tr. 16. Indeed, Plaintiff alleges a disability onset date of July 6, 2004. Plaintiff acknowledged, at the hearing that, except for 2007, she had not worked "much after 2000." Tr. 27. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). As such, the court finds that the ALJ properly considered Plaintiff's work history and that the ALJ's decision, in this regard, is supported by substantial evidence.

Second, Plaintiff contends that the ALJ did not consider Plaintiff's activities. The court notes, however, that the ALJ considered that, on April 28, 2005, Plaintiff said she had no difficulties with activities of daily living. To the extent that the ALJ may not have specifically addressed Plaintiff's activities, it does not mean that he did not consider them. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Moreover, because the ALJ's determination that Plaintiff was not disabled prior to June 30, 2005, is supported by substantial evidence, the failure of the ALJ to address Plaintiff's daily

---

[1] See discussion below finding that, to the extent the ALJ found that Plaintiff was not entitled to SSI after June 30, 2005, that the ALJ's decision is not supported by substantial evidence.

activities does not require reversal. See Montgomery, 69 F.3d at 275.  See also Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citations omitted); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").  In any case, in April 2005, Dr. Lisk, reported that Plaintiff had no problems with activities of daily living. Tr. 428.  Additionally, Plaintiff testified that, after her last chemotherapy in 2005 and prior to her diagnosis in 2007, she volunteered at the food pantry, went to church two days a week, could take care of her personal needs and perform household chores, sewed both by hand and with a sewing machine, and took vacations for up to a week at a time. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of  complaints. Eichelberger v. Barnhart,  390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987).  Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883).  "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (8th Cir. 2005) (citing Riggins v.

Apfel, 177 F.3d 689, 692 (8th Cir. 1999)).  See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir.

2001); Nguyen, 75 F.3d at 439-31 (holding that a claimant's daily activities, including visiting

neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and

affirming denial of benefits at the second step of analysis).

Third, as set forth in detail below, the ALJ considered the medical evidence through October

2005 and found that the objective medical evidence did not support Plaintiff's subjective complaints.

See Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a

claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more

weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545

(8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir.

1987); Davidson v. Astrue, 501 F.3d 987, 991 (8th Cir. 2007) (holding that an ALJ can discount

opinion evidence based on "an appropriate finding of inconsistency with other evidence").  The court

finds that the ALJ's decision in this regard is supported by substantial evidence.

Fourth, the court notes that Plaintiff testified that she had medical coverage after completing

chemotherapy and when asked why she did not seek medical care after completing chemotherapy she

said that she "just didn't go." Tr. 28-29.  Plaintiff's failure to seek regular medical treatment for her

alleged symptoms after February 2005 and prior to her second diagnosis is inconsistent with her claim

that she had a severe impairment as of June 30, 2005. See Brown v. Chater, 87 F.3d 963, 965 (8th

Cir. 1996) (holding that a claimant's lack of significant medical restrictions is inconsistent with

complaints of disabling pain).

Fifth, Plaintiff's colon cancer was resolved with surgery and chemotherapy.  A September

2005 CT scan of her chest, abdomen, and pelvis did not show metastatic disease. Conditions which

can be controlled by treatment are not disabling.  Additionally, Plaintiff did well with her colostomy.

See Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. The absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994).

Sixth, Plaintiff testified that she stopped working for "health reasons and then we moved." Tr. 27. Also, Dr. Lisk reported in April 2005, that Plaintiff's occupation was "homemaker" and Dr. Cunningham reported on March 27, 2006, that Plaintiff's husband had retired and "they may be traveling and may move." Tr. 374, 428. Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. Medhaug v. Astrue, 578 F.3d, 805, 816-17 (8th Cir. 2009) (holding that it was relevant that the claimant did not leave his job because of an injury but because he was laid off); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).

Seventh, the ALJ considered the testimony of Plaintiff's husband and discredited it. Plaintiff contends that the ALJ did not give specific reasons for discrediting the testimony of Plaintiff's husband. While the Eighth Circuit Court of Appeals has frequently criticized the failure of an ALJ to consider subjective testimony of the family and others and while such testimony must be considered, no case directs that reversal is appropriate where an ALJ fails to specifically do so when he has discredited the testimony of the claimant. See e.g., Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir.

1988). Smith v. Heckler, 735 F.2d 312, 317 (8th Cir. 1984). Moreover, the ALJ may discount corroborating testimony on the same basis used to discredit Plaintiff's testimony. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 2006). Where the same evidence that the ALJ relied upon when discrediting the testimony of Plaintiff would have been the same evidence which would have supported discrediting the testimony of Plaintiff's husband, the ALJ's failure to address or discount the testimony of Plaintiff's husband is "inconsequential." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that an ALJ's decision need not be reversed where he failed to consider testimony which would not have had an effect on the outcome of the case). Additionally, an ALJ may discount the testimony of a spouse because he has a financial stake in the outcome of the claimant's case. See Choate v. Barnhart, 457 F.3d, 865, 872 (8th Cir. 2006). The court finds, therefore, that the ALJ properly considered the testimony of Plaintiff's husband and that his decision, in this regard, is supported by substantial evidence.

Eighth, Plaintiff contends that the additional evidence she submitted to the Appeals Council establishes that the ALJ's credibility determination is not supported by substantial evidence. Plaintiff submitted, to the Appeals Council, statements from a minister and from three of Plaintiff's friends. These statements addressed Plaintiff's daily activities and her allegations of pain. The court has set forth above the standard applicable to consideration of statements from third parties regarding a claimant's alleged disabling condition. See Rautio, 862 F.2d at 180; Smith, 735 F.2d at 317; Black, 143 F.3d at 387. Thus, as the statements submitted to the Appeals Council addressed Plaintiff's daily activities and her allegations of pain, these statements do not affect the outcome of this case. In conclusion, the court finds that the ALJ's credibility findings, to the extent they address Plaintiff's being disabled prior to June 30, 2005, are supported by substantial evidence.

**B.      The Severity of Plaintiff's Impairments and Her Insured Status:**

Plaintiff filed applications for both disability benefits under Title II and SSI under Title XVI. In order to be eligible for disability benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status, June 30, 2005. Mapes v. Chater, 82 F.3d 259, 261 n.2 (8th Cir. 1996); Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994).  A non-disabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II. Thomas v. Sullivan, 928 F.2d 255, 260-61 (8th Cir. 1991).  Evidence of a plaintiff's condition subsequent to the expiration of insured status is relevant only if it relates to the severity of the Plaintiff's condition before the expiration of her insured status. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  A claimant must nonetheless establish that her disability existed prior to the expiration of her insured status. Martonik v. Heckler, 773 F.2d 236, 237 (8th Cir. 1985).

The sequential analysis set forth at 20 C.F.R. § 404.1520 is applicable to claims under both Title II and Title XVI. See 20 C.F.R. § 404.1520(c).  The standard for determining whether a claimant is eligible for disability benefits and SSI is virtually identical, with the exception that "there is no insured status requirement for receipt of SSI." [2] Kozaczka v. Schweiker, 520 F. Supp. 1189, 1191, 1193 (D.C.N.Y. 1981) (citing 42 U.S.C. § 1382c(a)(3)(A)).  As such, Plaintiff is not required to establish that she was disabled under the Act prior to June 30, 2005, to be eligible for SSI.

At Step 2, in order to be eligible for *both disability benefits and SSI*, as discussed above, an impairment must be both severe and last, or likely to last, twelve months.  "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that

---

[2]      Plaintiff does not argue that the ALJ erred in regard to his imposing the insured status requirement on her SSI claim.  Nonetheless, because it is the court's obligation to determine whether the ALJ's decision is based on substantial evidence, the court has considered this issue.

'significantly limits [a claimant's] physical or mental ability to do basic work activities.'" <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c) (1986)). An impairment or combination of impairments are not severe if they are so slight that it is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration. <u>Id.</u> at 153 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."). Moreover, "'[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal.'" <u>Warren v. Shalala</u>, 29 F.3d 1287, 1291 (8th Cir. 1994) (quoting <u>Cook v. Bowen</u>, 797 F.2d 687, 690 (8th Cir. 1986)). <u>See</u> <u>also</u> <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if a claimant's impairments would have no more than a minimal effect on his ability to work, they do not satisfy the requirement of step two). 20 C.F.R. § 404.1521(b) defines basic work activities as follows:

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

Additionally, 20 C.F.R. § 414.909 states that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.

We call this the duration requirement." The severity and the duration requirements are applicable to claims under both Title II and Title XVI. See 20 C.F.R. § 1520(c).

The ALJ in the matter under consideration incorrectly applied the insured status requirement to Plaintiff's Title XVI application for SSI and correctly applied it to her Title II application for disability benefits. For the reasons discussed below, the court finds that the ALJ's determination that Plaintiff is not entitled to disability benefits under Title II and that she is not entitled to SSI prior to June 30, 2005, is supported by substantial evidence. Although the ALJ erred in applying the insured status requirement to Plaintiff's SSI application for the period prior to June 30, 2005, the court finds his decision that she did meet the severity and the duration requirements prior to June 30, 2005 is supported by substantial evidence, as discussed below. On the other hand, as discussed below, because the ALJ did not consider whether Plaintiff met the severity and the duration requirements after June 30, 2005, the court will reverse and remand this matter for consideration of that issue in regard to whether Plaintiff is disabled for purposes of SSI.

As stated above, the ALJ, in the matter under consideration, found that Plaintiff was not disabled prior to June 30, 2005, because before that date she did not have a severe impairment or combination of impairments which were likely to result in her being unable to work for a period of twelve months. Upon reaching this conclusion the ALJ considered the medical evidence of record.

The court notes that the medical evidence establishes Plaintiff had a partial colonectomy with diverting colostomy on July 6, 2004, to remove an obstructive tumor; that by the time Plaintiff was discharged from the hospital it was determined that she had positive lymph nodes around the tumor and that she had Stage III colon cancer; that on July 28, 2004, Plaintiff's surgeon, Frank D. Roan, D.O., reported that plaintiff was "*having few problems* at [that] time other than some problems with sleeping and stamina, which ... were probably fairly normal after [her] procedure" (Tr. 243); that, on

August 2, 2004, William F. Cunningham, M.D., an oncologist, reported that Plaintiff was at risk of metastatic disease or recurrent or persistent microscopic disease, and that the literature suggested that Plaintiff should have aggressive chemotherapy (Tr. 381-83); that, on August 18, 2004, Dr. Roam inserted a port for administration of Plaintiff's chemotherapy (Tr. 252); that, on August 20, 2004, a CT scan showed two small pleural-based nodules within Plaintiff's right lung (Tr. 357); and that Plaintiff had her last chemotherapy treatment on February 25, 2005 (Tr. 329). Records reflect that on *February 27, 2005,* Plaintiff presented to the emergency room following the occurrence of three *seizures*, that she was confused, nauseous, and had general malaise, and that she was admitted for observation (Tr. 329-36); that while Plaintiff was treated at emergency services a nurse from Oxford Home Health reported that Plaintiff had no complications since starting chemotherapy (Tr. 335); that an EEG preformed on February 27, 2005, was normal and no epileptiform activity was noticed; that a February 27, 2005 chest x-ray was suspicious for pneumonia; and that an MRI performed in the emergency room showed no evidence of metastatic disease (Tr. 329). Records further reflect that Jerome Lisk, M.D., conducted a neurological evaluation of Plaintiff on April 28, 2005, and reported that Plaintiff had stopped her chemotherapy by that date; that Plaintiff reported numbness in her hands and legs; that she said she was experiencing excessive movements in her extremities; that Plaintiff's husband said that Plaintiff had the problem with excessive limb movement for at least thirty-seven years; that Plaintiff could not tandem gait; that she had decreased pinprick in the lower extremities; that she had normal sensation in her hands; that Plaintiff's *abductors, flexors, and extensors were all 5/5*; that Plaintiff stated she had no problems with activities of daily living; that Plaintiff was alert, oriented, and in no apparent distress; that Plaintiff complained of joint swelling and *denied joint pain*; that Plaintiff's neuropathy might be related to her chemotherapy medications; that Dr. Lisk prescribed Effexor for Plaintiff's neuropathy; that if Effexor did not work, he would switch Plaintiff to

Neurontin; that Dr. Lisk prescribed Mirapex for Plaintiff's restless leg syndrome; and that Plaintiff was to follow-up in three weeks. Tr. 427-31.

Chest CT scan reports June 3 and September 16, 2005 state that *no metastatic disease* was present in the chest, abdomen, and pelvis. Tr. 309-10, 314-15. Dr. Cunningham reported on September 23, 2005, that Plaintiff had "*an excellent appetite*"; that she had *gained weight*; that she had "a *functioning colostomy and it ha[d] been going well*"; that Plaintiff had no nausea or vomiting; and that Plaintiff had no evidence of colorectal carcinoma. Tr. 379. Thomas C. Moffe, M.D., reported on October 3, 2005, that Plaintiff denied chest pain, shortness of breath, orthopena, nausea, vomiting, constipation and diarrhea; that review of her musculoskeletal system showed no myalglas or arthralgias; that Plaintiff denied a history of chronic headaches or seizure disorder; that her heart had a regular rate and rhythm; that her lower extremities were neurovascularly intact; that Plaintiff was alert and appropriate; that she had a well healed lower midline scar; and that no masses were noted in her abdomen. Tr. 301-302. An October 4, 2005, barium enema, ordered by Dr. Moffe to evaluate a rectal pouch, showed diverticulosis and was otherwise normal. Tr. 423. Records reflect that, on October 24, 2005, Plaintiff was admitted to the hospital for reversal of her colostomy; that she tolerated the procedure well; that intrabdominal findings were negative for recurrent tumor; and that she was discharged to home on October 31, 2005, in satisfactory condition. Tr. 299. Dr. Cunningham reported on December 6, 2005, that, *since the reversal of her colostomy*, Plaintiff continued to have diarrhea and had difficulty planning an appropriate diet; that Plaintiff had no peripheral lymphadenopathy; that her abdomen showed healing wounds; that "*it is all very benign*"; that there was no evidence of colorectal carcinoma at that time; and that Plaintiff's port was to be flushed. Tr. 377.

Dr. Cunningham reported on March 3, 2006, that Plaintiff continued to have her Port-A-Cath in place; that she said she had problems with neuropathy, restless leg syndrome, and bone pain; that examination showed that Plaintiff's HEENT was unremarkable, that her bones were non-tender to percussion, that her lung fields were clear, and that her abdomen wound was well-healed; that Plaintiff had not had adjuvant therapy for a year; that Dr. Cunningham believed that Plaintiff's "multiple complaints" did "not represent disease"; and that, due to Plaintiff's complaints, he would order a bone scan. Tr. 361.   A whole body scan, ordered by Dr. Cunningham and conducted on March 14, 2006, showed "minimally increased uptake over the right glenhjumeral joint as well as the right side of L5, both of which [were] thought to represent degenerative change." The *remainder of the bone scan was within normal limits*, with "no evidence for bony metastasis." Tr. 287-88. A March 24, 2006 PET scan showed no evidence of recurrent malignancy or metastatic disease from colorectal cancer. It was noted in the report from the PET scan that "the area of suspected possible stricture in the proximal sgmoid colon on CT of 3/14/06 appear[ed] normal on the PET scan" and that the "very small low density lesions noted in the liver on CT can [were] probably too small to reliably image with [the] PET scan." Tr. 284.   On June 27, 2006, Dr. Cunningham reported that Plaintiff had no evidence of colon cancer and that Plaintiff said she had "a great deal of bone pain, restless leg syndrome, and degenerative joint disease, poorly controlled." Tr. 370. A September 12, 2006, CT scan report states that there was "no sign of recurrent or residual mass lesions identified in the abdomen and pelvis"; that "low density lesions in the liver [were] most likely cysts or hemangiomas and [were] similar to prior exam"; that no contrast was identified; and that the chest was negative. Tr. 278-79.

August 28, 2007 lab work showed Plaintiff's CEA level was 62.8. Tr. 388.  Dr. Cunningham reported on September 19, 2007, that this CEA level was markedly elevated; that Plaintiff was

concerned with this elevation; that Plaintiff said that she had been feeling well; that Plaintiff had no new complaints; that she had an excellent appetite and her bowels worked "quite well"; that, upon examination, Plaintiff looked "very heathy and very well," her bones were nontender to percussion, her lung fields were clear, and her extremities were normal; and that Dr. Cunningham would schedule CT scans and a PET scan. Tr. 266-67. A September 21, 2007, CT scan showed a new 8 mm nodule at the right lung base, suspicious for lung neoplastic disease and a new low density mass on the left lobe of the liver, which was a metastatic lesion. Tr. 272. Plaintiff underwent a CT-guided needle biopsy of the liver on October 3, 2007, and "the initial pathology was positive for malignant consistent with metastatic colon cancer." Tr. 262. Plaintiff underwent a diagnostic laparoscopy resection of the liver and intraoperative ultrasonography on October 29, 2007. She also had a nodule on her diaphragm removed. The surgical pathology report states that Plaintiff's diagnosis was "metastatic moderately differentiated adenocarcinoma consistent with colon primary." Tr. 446. When Plaintiff was discharged from the hospital on November 3, 2007, it was reported that she was stable, tolerating her diet, and ambulating well; that her pain was controlled with medication; that she should not lift more than ten pounds; and that she could resume her activities as tolerated. Tr. 438-39, 460-62.

On February 19, 2008, Plaintiff was diagnosed with complete thrombosis of the right jugular vein by a low echogenicity clot and a small adjacent lymph node which did not meet the criteria for pathologic enlargement. Tr. 482. A repeat CT scan showed the thrombosis of the right internal jugular vein and decreased attenuation to the liver. On May 28, 2008, Plaintiff was advised that, in view of multiple sites of metastasis, repeated chemotherapy would be her best treatment option and that if her current lesions remained stable with no additional sites of metastasis, it might be reasonable to surgically remove the abdominal lesion. Tr. 434-35.

In particular, when determining that Plaintiff did not have a severe impairment prior to June 30, 2005, the ALJ considered that, on July 28, 2004, Plaintiff reported having few problems other than insomnia and fatigue; that it was noted that Plaintiff was doing well post surgery with her colostomy; that Plaintiff's chemotherapy ended in February 2005; that she had a seizure in February 2005 and that an electroencephalogram was normal and an MRI of Plaintiff's brain revealed no significant abnormalities; that, on April 28, 2005, examination showed she had normal muscle strength, decreased sensation of her lower extremities and forearms, and normal sensation of her hand; that June 3, 2005 CT scans showed signs of previous inflammation in Plaintiff's chest and no metastatic disease; that it was noted, on September 23, 2005, that Plaintiff had an excellent appetite; that on examination, on October 3, 2005, Plaintiff denied having chest pain, shortness of breath, nausea, diarrhea, myalgias, or arthralgias; and that Plaintiff's colostomy was reversed in October 2005. The court notes that Plaintiff testified that, after she had her last chemotherapy in February 2005, she did not see an oncologist until 2007, although she testified that she did have CT and PET scans during that period. Additionally, assuming as testified by Plaintiff, she had to take a daily nap which lasted thirty to ninety minutes and that she had diarrhea while she was undergoing chemotherapy, Plaintiff's therapy lasted no more than eight months.[3]  Moreover, two months after Plaintiff finished chemotherapy Dr. List reported that Plaintiff's *abductors, flexors, and extensors were all 5/5*; that Plaintiff stated she had no problems with activities of daily living; and that Plaintiff was alert, oriented, and in no apparent distress.

Upon finding that Plaintiff's work-related limitations prior to the expiration of her insured status did not last twelve months or longer, the ALJ also considered that the duration of Plaintiff's

---

[3]    Plaintiff testified that she had chemotherapy every two weeks for a total of twelve treatments.

chemotherapy. He further considered that although Plaintiff had seizures in February 2005, the record does not reflect that she had a seizure after that date. Additionally, the ALJ considered that, although Plaintiff reported symptoms of neuropathy in April 2005, she did not report such symptoms before that date. The court finds that the ALJ's determination, at Step 2, that, prior to June 30, 2005, Plaintiff did not have a severe impairment which lasted twelve months or longer is supported by substantial evidence. The court does not mean to say that Plaintiff did not have a severe impairment any time during the period from her onset date to June 30, 2005. Rather, any severe impairment which Plaintiff had during this period did not last for twelve months or more and, thus, did not meet the duration requirement applicable to both Title II and Title XVI. As such, the court finds that the ALJ's determination that Plaintiff did not have a severe impairment that lasted or was likely to last for twelve months from her onset date to June 30, 2005 is supported by substantial evidence. The court further finds, therefore, that the ALJ's determination that Plaintiff not entitled to benefits under Title II is supported by substantial evidence. Because the ALJ found that, from her alleged onset date to June 30, 2005, Plaintiff did not meet both the severity and the duration requirements, the court also finds, to the extent the ALJ found that Plaintiff is not entitled to SSI under Title XVI prior to June 30, 2005, that the ALJ's decision is supported by substantial evidence.

Plaintiff argues that, at Step 3, the ALJ should have found her disabled because she met Listing 13.18C, which provides that a claimant is disabled if medical records and reports document carcinoma of the colon - large intestine - with recurrence or metastasises after resection. In support of this position Plaintiff argues that a June 2005 CT scan revealed two small lesions on her liver and that those lesions eventually developed into cancer, which cancer was diagnosed in October 2007. To be eligible for disability benefits under Title II, a claimant must show that she meets all specified medical criterial for that Listing prior to the date the claimant was last insured. See Grebenick v.

Chater, 121 F.3d 1193, 1197 (8th Cir. 1997). In Plaintiff's case the evidence does not establish that her colon cancer had metastasized beyond her colon prior to June 30, 2005. Indeed, when Dr. Moffe reversed Plaintiff's colostomy in October 2005 he reported that findings were negative for recurrent tumor. Plaintiff's liver cancer was not diagnosed until October 2007. Dr. Cunningham reported on December 6, 2005, that there was no evidence of colon cancer. On March 14, 2006, Dr. Cunningham reported that there was no evidence for bony metastasis. As such, the court finds that substantial evidence on the record does not establish that Plaintiff met Listing 13.18C prior to June 30, 2005.

To the extent that the ALJ did not address Listing 13.18C, an ALJ's failure to address specific listing is not reversible error if record supports overall conclusion. Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004) (burden is on claimant to show she meets or equals listing's requirements; to meet listing, impairment must meet all specified criteria; Neal ex rel. Walker v. Barnhart, 405 F.3d 685, 689 (8th Cir. 2005) (child's impairment is medically equal to listing if it is at least equal in severity and duration to listing's medical criteria).

Plaintiff contends that the ALJ erred in not addressing Plaintiff's medical records after October 2005. As discussed above, because the ALJ found that Plaintiff did not have a severe impairment that lasted twelve months or was likely to last twelve months as of June 30, 2005, the ALJ's analysis was not required to proceed further in regard to Plaintiff's being disabled under Title II. Additionally, as discussed above, medical evidence after June 30, 2005, is relevant, for purposes of Title II, only to the extent it sheds light on whether Plaintiff was disabled as of that date. See Basinger, 725 F.2d at 1169. Moreover, the ALJ did specifically address medical evidence for a four month period after the date that Plaintiff was last insured, June 30, 2005. Thus, the ALJ's decision

suggests that he considered whether Plaintiff's condition after the expiration of her insured status shed light on whether she met the severity and duration requirements prior to June 30, 2005. As such, the court finds, to the extent the ALJ determined that Plaintiff is not entitled to benefits under Title II, that the ALJ did not err in failing to specifically address Plaintiff's medical records beyond October 2005. See  Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

In conclusion, the court finds that the ALJ's determination, at Step 2 of the sequential analysis, that, as of June 30, 2005, Plaintiff did not have a severe impairment which lasted or was likely to last for twelve months is supported by substantial evidence and that this determination is consistent with the case law and Regulations. The court further finds that the ALJ's determination that Plaintiff is not entitled to benefits under Title II because she did not meet the severity and the duration requirements from her alleged onset date to the expiration of her insured status is supported by substantial evidence. Additionally, to the extent that the ALJ found that Plaintiff is not entitled to SSI for the period from her alleged onset date to June 30, 2005, because she did not meet both the severity and the duration requirements during this period, the court finds that the ALJ's decision is supported by substantial evidence. On the other hand, because the ALJ did not consider whether Plaintiff met both the severity and duration requirements after June 30, 2005,[4] through the date of the ALJ's decision, for purposes of her being eligible for SSI, the court will reverse and remand this matter for consideration of this issue. See Ford, 518 F.3d at 981. Upon remand, the ALJ should consider, based on the evidence of record, whether Plaintiff became disabled within the meaning of

---

[4]       Although the ALJ's decision suggests that he found that Plaintiff did not meet the severity requirement from the period of June 30, 2005, through October 2005, the decision is not clear in this regard.

Title XVI at any time after June 30, 2005, through the date of the ALJ's decision. Under such circumstances, as the record is fully developed in regard to Plaintiff's medical history through the date of the ALJ's decision, the ALJ need not reopen the record.

## IV.
## CONCLUSION

For the reasons fully set forth above, the court finds that the ALJ's decision is supported by substantial evidence in regard to Plaintiff's not being disabled under Title II; that the ALJ's decision is supported by substantial evidence in regard to Plaintiff's being not disabled under Title XVI prior to June 30, 2005; and that the ALJ's decision it is not supported by substantial evidence in regard to whether Plaintiff became disabled for purposes of Title XVI after June 30, 2005, through the date of the ALJ's decision.

The court finds, therefore, that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ is directed to consider Plaintiff's application for SSI under Title XVI in a manner consistent with this court's opinion. **The court stresses that upon reversing and remanding this matter it does not mean to imply that the Commission should return a finding of "disabled."** The court is merely concerned that the Commissioner's final determination, as it presently stands, does not comply with the Regulations and that it is not supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Complaint is **GRANTED,** in part, and **DENIED**, in part. Docs. 1, 17

**IT IS FURTHER ORDERED** that the ALJ's denial of Plaintiff's application for SSI under Title XVI from July 5, 2004, through June 30, 2005, and that the ALJ's denial of Plaintiff's application for disability benefits under Title II are affirmed;

**IT IS FURTHER ORDERED**, and that the ALJ's denial of Plaintiff's application for SSI under Title XVI from June 30, 2005, through the date of the ALJ's decision is reversed and remanded;

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this 25th day of October, 2010.　　　UNITED STATES MAGISTRATE JUDGE